### FRANKLIN TAYLOR *vs.* COUNTY COMMISSIONERS OF WORCES-TER.

A county commissioner is disqualified by personal interest to take part in adjudications of his board laying out and directing the construction of a highway over land of his sister's husband, and entitling him to damages by reason of the location; and such proceedings cannot be rendered valid by any subsequent waiver, consent or release, but are wholly void.

PETITION for a writ of *certiorari* to quash proceedings of the county commissioners of Worcester laying out a highway in the towns of Holden and Princeton; heard by *Morton*, J., and reported for the consideration of the full court. The following are the material parts of the report:

" It appeared that in May 1866 certain citizens of Holden and Princeton presented a petition to the county commissioners to lay out and build a new county road in said towns. Upon this petition the county commissioners issued notices, held meetings, adjudicated that the common necessity and convenience required said road, laid and located the same, and did other acts in regard to the matter. During the pendency of these proceedings before the board of county commissioners, Velorous Taft, Esquire, was a member thereof, and presided at the meetings held as aforesaid, as chairman thereof, and participated in all the proceedings had under the petition.

" Moses H. Bullard, of Princeton, was one of the original signers of the petition. The road as prayed for, and as located, passed through a farm owned and occupied by him, and damages

were awarded to him by the county commissioners in their final decree locating the road and assessing damages therefor. Bullard wrote the petition, and circulated it to some extent; and appeared before the board in behalf of the petitioners, and managed the case for them at the several hearings. The wife of Bullard, during all the time of the pendency of these proceedings, and who had an inchoate right to dower and homestead, was the sister of said Velorous Taft.

"The laying out of the road was opposed by the town of Princeton; and Taylor, the present petitioner, was a legal voter of Princeton, was present as a witness at the hearing as to the common convenience and necessity of the road, and was also present at the subsequent meetings and at the time of the location. The commissioners, at a regular meeting held July 1, 1869, made the decree laying out and locating the road, and ordering the towns of Princeton and Holden to construct the same before July 1, 1870. The next regular meeting of the board was on the second Tuesday of September 1869, and at an adjournment thereof, held September 30, 1869, Taylor filed his petition for a jury to revise the proceedings of the commissioners laying out and locating said road, and the award of damages to him therefor, and recognized for costs, as required by law, and at another adjournment thereof, held October 22, 1869, by consent of counsel for respondents said petition was amended. All this was done by Taylor for the purpose of saving his rights. At the time said petition was filed, or just before, Taylor's counsel informed Taft that Taylor objected to the proceedings in regard to the road, on account of Taft's relationship to Bullard. After the petition and bond were filed, Taylor did nothing more in regard to it, did not then or afterwards otherwise ask or move for an order for a jury or the issue of the warrant therefor, and no such order was made or warrant issued, and the said meeting adjourned without day in December 1869, no action being had on said petition. No notice in relation to said petition was given to the petitioner or to the towns. No order for such notice was passed, and no order was passed for arresting the work; nor was such notice or order applied for except as herein appears. The usage of the county commis-

sioners as to ordering a jury in this class of cases is, that the petition for the jury is filed, and when the petitioner asks for the warrant to issue the court directs the clerk to issue it.

" During all the proceedings, there were two special commissioners for the county. But no objection was made to the competency of Taft to act as commissioner, at any stage of the proceedings.

" The road is 461 rods in Princeton, 252 rods in Holden, 77 rods on Bullard's land. Bullard and others told the commissioners that they should charge nothing for their land, but they might give them what they pleased for fencing ; but no release of damages on the part of Bullard was ever executed. It appeared on the trial that Bullard was ready to release all damages by reason of the location of the road on his land.

" Taylor lived about quarter of a mile from Bullard, and knew of the relationship between Taft and Bullard's wife, before these proceedings. Taylor testified that it was not present in his mind, at the hearings, that the relationship existed, nor did he suppose that it made any difference with his rights. The relationship was generally known in the town of Princeton, and both towns were represented by committees at the hearing. Taylor was informed by his counsel, when he filed his petition for a jury, that the relationship aforesaid made the proceedings void."

*W. W. Rice & T. L. Nelson*, for the petitioner.

*P. E. Aldrich & H. B. Staples*, for the respondents.

CHAPMAN, C. J. As one of the county commissioners was a brother in law of Bullard, over whose land the highway was located, and who was entitled to damages, the proceeding was *coram non judice* and utterly void, and no subsequent waiver, consent or release could render it valid. *Hall* v. *Thayer, ante,* **219.** *Writ of certiorari to issue.*