## McREA ET AL. V. MERRIFIELD ET AL.

1. CONDITIONAL SALE: *Title to the property; right of vendor.*

   The sale of a chattel upon condition that the title is to remain in the vendor until payment of the purchase price, vests no title in the purchaser until payment; and upon his failure to pay as agreed, the vendor may recover the property by replevin, or treat the sale as valid and sue for the agreed price.

2. MORTGAGE OR CONDITIONAL SALE: *Construction of contract.*

   The sale of a chattel with the reservation of title to the vendor until the purchase price is paid, is a conditional and not an absolute sale, and no title vests in the purchaser until the payment; and a provision in the contract that the purchaser shall execute a mortgage on the property to secure the payment does not make the sale absolute unless the mortgage be in fact executed.

3. SALES—CONDITIONAL: *Sale by purchaser. Title.*

   One holding property under an agreement to purchase, has an interest in it which he may sell, and if the conditions of his purchase are performed the title of his vendee will be complete.

4. SAME: *Demanding security for the price.*

   Requiring security for the price to be paid for a chattel, does not of itself make the sale absolute.

APPEAL from *Clay* Circuit Court.

Hon. W. H. CATE, Judge.

*E. F. Brown,* for appellant.

1. A fair interpretation of the contract shows that the title passed to Erwin & Nesbit, plaintiffs reserving only a security in the nature of a mortgage, which, not being recorded, was void as against appellants. The proof shows that plaintiff never relied on the condition reserving title, but that the delivery was unconditional, and a complete sale. The evidence also required a showing of solvency on the part of the vendees, and looked to other property

than the machinery for the security of the notes. The contract is also indorsed : *"Paid by notes."*

2. No demand was made in this case before suit. (*17 Ind., 90; 54 ib., 58.*) Vendors cannot assail title as against a *bona fide* purchaser where he has been guilty of laches. *36 Mo., 497.*

3. Where one voluntarily places personal property in the hands of a purchaser, and thus makes him the ostensible owner, a sale by the latter to a *bona fide* purchaser for value, without notice, will be valid to pass the title, although the sale by the owner was on condition of payment for what has not been performed. *5 N. Y., 41; 6 Johns, 437; 37 Barb., 509; 6 Drew, 238; 36 N. Y., 497; 30 Ark., 403; 2 Kent's Com., 6th Ed., 496–7; 77 N. Y., 391; 15 N. Y., 409; 26 ib., 598; 6 Duer., 238; 21 Ill., 330; 25 Barb., 483; 6 Pick., 262; 4 ib., 516; 13 Ill., 614; 8 Wend., 256; 2 Sanders, 47; 4 Wash. C. C., 594; 37 Ill., 370; 24 ib., 591; 46 ib., 487; 68 Ill., 553; 13 ib., 610; 21 ib., 330; 88 ib., 190; 14 S. & R., 214; 5 ib., 286; 10 ib., 419; 4 Watts, 121; 64 Penn., 501; 1 Barr., 190; 8 Wright, 451; 3 Brewster, 548; 2 Grant, 248.*

4. Taking the personal guarantee, indorsed upon the notes and contract, extinguished the plaintiff's vendor's lien, and enabled the vendees to pass a good title to an innocent purchaser.

*F. G. Taylor*, for appellees.

1. Demand was not necessary. *35 Ark., 169.*

The contract itself shows that the *title* was reserved, and that it was a conditional sale. In such a case the rights of the vendors is preferred to those of even an innocent purchaser. *Andrews v. Cox, 42 Ark., 473; McIntosh v. Hill, 47 Ark., 363.*

11–48

COCKRILL, C. J. The appellees (the plaintiffs below) brought an action of replevin against the appellants to recover possession of an engine, a saw mill and a lot of tools, etc. A jury being waived, the court found the facts as follows:

"That plaintiffs on order shipped the mill and other property to Erwin & Nisbet under a contract of sale, in which it was expressly agreed that the title should not pass from the plaintiffs to the purchasers until the purchase money was fully paid. This is shown by the contract which is admitted in evidence. That the purchase money was never paid in full is alleged in the complaint and not denied by the answer; that Erwin & Nisbet sold the mill to defendants for an adequate consideration, which was mostly paid, and that they were innocent purchasers, without notice of plaintiffs' rights, and were diligent in making inquiry as to outstanding claims, and bought in good faith; that the value of the boiler was $500; engine, $200; saw mill, carriage and attachments, $200; belt and fixtures, $50."

Judgment was entered for the plaintiffs.

1. CONDITIONAL SALE: Title: Right of vendor.

The correct determination of this case depends altogether upon the construction that must be given to the contract entered into between the plaintiffs and Erwin & Nisbet, from whom the appellants purchased. If that contract was, in fact, a conditional sale, the title to the property remained in the plaintiffs, unless the condition was performed or waived, and Erwin & Nisbet could transfer no better title, even to an innocent purchaser, than they themselves had. This we have ruled at the present term (*McIntosh v. Hill,* *47 Ark. 363*), and since the decision, the Supreme Court of the United States, upon an exhaustive review of the authorities, have reached a like conclusion. (*Harkness v. Russell & Co., 7 Sup. Ct. Rep., 50.*) If, on the other hand, the title passed by the contract, and the plaintiffs have, as it

is argued, reserved only a security in the nature of a mort-gage, then the purchasers from their vendees took 'the property freed from this claim because under our law a mortgage is void as against strangers, unless acknowledged or proved and filed for record. The contract, as far as it is material to this question, is as follows:

"INDIANAPOLIS, Dec. 4, 1882

"To C. E. Merrifield, Indianapolis, Ind.:

"You are hereby authorized to fill the following order for the undersigned, and have the same ready for delivery at Indianapolis, Ind., on or about the 15th day of December, 1882, and ship to Rector, Clay county, Ark., one 20-horse engine on skids, with wooden axles and $4\frac{1}{2}$ boxes attached, duplex inspirators on engine in place of pumps, we to give you mortgage on engine and mill, and all fixtures we get of you, for which the undersigned hereby agree to pay you the sum of $1960, as follows, notes to draw 8 per cent. from this date until paid:

*2. Mortgage or conditional sale: Construction.*

| | |
|---|---|
| " Cash................................... | $400 |
| Note due 15th June, 1883, for..... | 500 |
| Note due 15th Dec. 1883, for...... | 500 |
| Note due 15th June, 1884, for..... | 560 |
| Note due.................18............. | |
| Note due.................18............. | |

$1960

"And it is expressly understood that a part of the consideration for the extension of time above named is that the merchandise herein mentioned shall be fully settled for cash or notes before such merchandise is used, and if the purchaser shall use said merchandise and refuse to make settlement as provided herein, the whole amount shall become due at once, and the purchaser shall no have right to claim any extension of time whatever.

"And it is especially understood and agreed that the title or ownership of above property does not pass from C. E. Merrifield until it is fully paid for (notes and drafts not to to be considered as 'payments' until actually paid), and in default of the full payment of any one payment as herein agreed, you or your agent may, without process of law, take full possession of and remove said property above mentioned.

"And it is further agreed that said machinery shall not be attached to so as to become a part of any real estate, but shall remain personal property until the debt herein secured is fully paid. And we hereby bind ourselves not to sell, trade, transfer, convey or otherwise dispose of the machinery above ordered, or any part thereof, until fully paid for, without having first obtained the consent of C. E. Merrifield.

                    " E. P. ERWIN, [Seal.]
                    " Jo. NISBET, [Seal.]
        " Postoffice, Rector, Clay Co., Arkansas.
        " Order sent in by————————————"

*Reservation of title.* If we look alone to that provision of the contract which reserves the title or ownership of the property to the vendors, it is evident that it was the intent of the parties not to make an absolute sale and purchase, but only an agreement to sell on the one hand and purchase on the other, upon the condition that the notes described were paid at maturity. The meaning is plain, and the language admits of no other construction.

*Promise to give mortgage.* It is argued, however, that the previous provision looking to the execution of a mortgage by the intended purchaser is inconsistent with the plaintiff's ownership, and is itself a recognition of title in Erwin & Nisbet. If a mortgage had been actually executed this would undoubtedly be true, or if the clause were itself a mortgage, the

McRea et al. v. Merrifield et al.

argument would be well founded, for a contract is to be judged by its substance and not by the name that the parties may choose to give it. But all the provisions of a contract are to be construed together, so that if possible they may all harmonize.

Now, a suggestion or even a stipulation by Erwin & Nisbet that they would give a mortgage is not of itself necessarily a mortgage. As was said in *Barnett v. Mason, 7 Ark.*: " It is but another proof of the maxim that there is a difference between one's saying he would do a thing and doing it." A mortgage may have been regarded by the parties as an effective security, and it was doubtless their intention to leave in Erwin & Nisbet the option to allow the contract to take the form of a sale and mortgage back. It was not necessary, however, for the plaintiff's security that it should be done. They had the means of security in their own hands in the ownership of the property, and clearly indicate the intention of holding it. The subsequent reservation of title by them shows that the execution of the mortgage, if one was intended to be executed at all, was a condition precedent to the vesting of title in Erwin & Nisbet. This is a reasonable construction of the contract, and evidently accomplishes the end the parties to it had in view. *Clayton v. Hester, 80 N. C., 275; Vasser v. Buxton, 86 ib., 335.*

It is argued further that the intention to make an absolute sale is evidenced by the clause in the contract requiring Erwin & Nisbet to have permission of the plaintiffs in order to sell. But we fail to appreciate the force of the argument. One holding under an agreement to purchase has an interest in the property which he may sell, and if the condition of the contract is afterwards performed, the title of his vendee will be complete. *Compton*

3. Re-sale by purchaser. Title of his vendee.

McRea et al. v. Merrifield et al.

*v. Pratt, 105 Mass., 225; Currier v. Knapp, 117 ib., 324; Chase v. Ingalls, 122 ib., 381.*

But such sub-sales may put the owner to great inconvenience in guarding and gathering together his property. A provision not to sell or remove the property is simply an attempt to prevent this inconvenience, and does not show an intent to make an absolute sale. *Carter v. Kingsman, 103 Mass., 517.* After the sale by Erwin & Nisbet in violation of this agreement the plaintiffs could maintain their action without demand. *ib.*

4. Requiring security for purchase price

When the contract was entered into the plaintiffs took the notes of Erwin & Nisbet for the amount agreed upon, but before doing so they required each of them to give a written assurance that he was solvent and possessed of specific property subject to execution. This fact is appealed to as evidence of the intention to treat the parties as debtors and to look to them personally for payment, and consequently to treat the property as a security only for the debt. But we think the conclusion drawn from the premises is too broad. It is true that in case of a conditional sale the absolute relation of debtor and creditor does not exist. But when the condition is broken the seller may elect to reclaim his property, or treat the transaction as a sale and bring an action for the agreed price. *Bailey v. Hervey, 135 Mass., 172.* In the latter event he is of course interested in the solvency of his vendee. Moreover, it is not ordinarily the part of a business man to enter into even an agreement to sell personal property to an irresponsible stranger. The property in this instance was to be carried from Indiana into Arkansas, remote from the residence of the owners, and might be converted, as it was, to the individual use of the parties entrusted with it, or might be destroyed through their fault. The only protection would then be the personal responsibility of the purchaser.

A contract containing a provision, the legal effect of which is the same as that now under consideration, was ruled to be a conditional sale in the case of *Harkness v. Russell, sup.*

There was a pencil memorandum, "paid by notes," endorsed on the contract, but it is unsigned, bears no date, and it is not shown by whom it was made or how it came there. This cannot be held to overcome the positive agreement of the parties that the notes were not to be taken as payment.

The appellants have presented nothing that estops the appellees from enforcing the condition of the contract, and the judgment is affirmed.